The opinion of the Court was delivered by
Manning, J.
Larkin Edwards, to whom a grant of six hundred and forty acres of land had been made, sold it to Angus McNeil and six others in 1835, and they divided a part of it into lots and streets, formed a company for its sale and management, which they called the Shreveport Town Company, and obtained an act of incorporation in 1839. The present town of Shreveport is situated upon and within that grant.
A map or plat of the future town was made between the two dates above, upon which an open space of irregular shape and width is left between the front blocks of lots and the river. In 1871 this open space was divided into fifty-three lots, and these lots were sold by the town authorities, and purchased by a number of persons, among whom are the present defendants.
The plaintiffs claim title to this open space, or the lots into which it was divided, through immediate or mesne conveyances from Larkin Edwards. The defendants contend that this open space was dedicated to the public when the town was laid off and incorporated, and had been used for public purposes more than thirty years, when iu 1871 the town council,-by authority of the legislature, sold and conveyed it, or such parts of it as the plaintiffs claim in this suit,' to them. The prescription of thirty years and res adjudícala are pleaded.
The act of incorporation provides, “ that all the tract or portion of land situate in the Parish of Caddo, on the southwest hank of Red River, laid off and divided into lots by the i^ireveport Company, and known as the reservation made by the Caddo Indians to Larkin Edwards, consisting of six hundred and forty acres, shall continue to ho designated and known as the Town of Shreveport, etc.” Acts of 1839, p. 200.
The plaintiffs contend that only such part of this tract as had been then laid off and divided into lots was incorporated as a town by this Act, and since the open space between the river and the nearest lots or blocks was not laid off, that the ownership of-it remained in the proprietors of the Larkin Edwards’ reservation, and that it was not within the corporate limits of Shreveport prior to 1871, and had not been dedicated to, or used by the town for public purposes; and if it had been so dedicated, it was afterwards sold to private individuals, for private purposes, and, in consquence, its ownership reverted to the original proprietors or their vendees.
The land thus incorporated is described as that “ known as the *1092 reservation made by the Caddo Indians to Larkin Edwards, consisting of six hundred and forty acres,” and also as ‘‘laid off and divided into lots by the Shreveport Company.” To sustain the plaintiffs’ construction, this last sentence must alone be adopted as the description of the area incorporated, and the larger and broader descriptive terms must be ignored. This is not in accordance with the accepted canons of construction. The draftsman of the Act first recites the territory to be incorporated as the land in Caddo, on the river bank, laid off into lots, and then to prevent its restriction to that alone, adds its designation as the Larkin reservation, and its extent as 640 acres.
The plaintiffs’ counsel ask, “ what reason could there be, at that early day, to include so much rural property within a city (sic) and subject it to taxation, property which could not reasonably be expected to be needed for urban purposes for many years.” He need only measure tlie extravagant hopes of the founders of Shreveport by those of the inhabitants of villages and towns on the route of the railway down the Red River valley, at this moment, to understand what visions of coming- greatness agitated their breasts. The men who incorporated Shreveport would have scornfully smiled at the incredulity and want of confidence of him who doubted that tlie whole Larkin Edwards’reservation would shortly be needed for tlie rapidly increasing population.
If tlie extent of the incorporated area were in doubt, by reason of confusion in its description, tlie contemporaneous and subsequent continuous construction, accepted by the public and by the Larkin Edwards’ vendees, shows that it was not considered as confined to the laid-off lots.
These vendees, as thq, Shreveport Town Company, sold as many lots as were in demand, and in 1848 divided among themselves whatever property was then unsold. The notarial act of partition is drawn with great minuteness of detail, and in the opening sentence announces that they ‘‘ proceeded to make a partition and distribution in kind of the property belonging to the Shreveport Company, remaining unsold in the town of Shreveport, among and between the owners and proprietors thereof.” No part of this “ open space” is included in this partition, and it is thus apparent that the members of the Company did not then suppose they had retained the proprietorship of it. This partition was manifestly intended to be final and complete, and tbe failure to include this open space in it negatives tlie plaintiffs’ theory that it was treated as their private property. Sarpy vs. Municipality, 9 An. 597.
If it wa.s not their property in tlie same sense as the lots which they partitioned, it must have been the property of the public, and must *1093 have been considered by themselves as dedicated to public uses, as the spaces between the blocks were thus dedicated for streets. In neither case was there an express dedication in totidem verbis, nor was it necessary. City of Lafayette vs. Holland, 18 La. 287.
From 1839, the date of incorporation, to 1861 when a claim was first set up to this open space, neither the plaintiffs nor their vendors ever exercised anjr act of ownership over it, nor is there any evidence to raise a presumption that they ever intended to interpose any claim to it. This claim was first made in 1861, and was not successful. Pickett vs. Brown, 18 An. 560. The same question was again presented, and adjudicated adversely to the claimants. Shreveport vs. Walpole, 22 An. 526. We do not propose to go over the ground covered by the opinions in those cases. They form the basis of the plea of res adjudicates Strictly and technically they do not sustain it, but they decide the identical question in this suit, and we see no reason to induce us to reach a different conclusion.
The doctrine was early declared by this Court, that a municipal corporation may alienate, or change the use and destination of public places with the consent and by the authorization of the sovereign power first obtained, whenever the public interest may require it. De Armas vs. Mayor, 5 La. 132; Mayor vs. Hopkins, 13 La. 326; Mayor vs. Leverich, Ibid, 332..
Such authorization was given the Town of Shreveport by the legislature of the. State in 1871, and tlm title of the defendants is thus protected from successful attack. The two adjudications, that the open space upon which the defendants have built, had been and was dedicated to public uses, and that the title thereto was vested in the municipal corporation for such purposes, ought not lightly to be disturbed, even if they were erroneous; but we are satisfied of their correctness.
The. lower court so adjudged.
Judgment affirmed.